UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELIA JOHNSON, | § § § | Civil Action No. 4:19-cv-01622 |
| Plaintiff, | § § | |
| v. | § § | |
| CONN APPLIANCES, INC. D/B/A CONN'S HOMEPLUS; | § § § | |
| Defendant. | § § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CONN'S MOTION TO DISQUALIFY, APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, AND MOTION FOR SANCTIONS**

**NOW COMES** Angelia Johnson ("Plaintiff"), by and through the undersigned counsel, and files this Memorandum in Opposition to Conn's Motion to Disqualify, Application for Temporary and Permanent Injunctive Relief, and Motion for Sanctions (the "Motion"):

**I.
SUMMARY**

This is an individual action brought by Angelia Johnson ("Plaintiff") against Conn Appliances, Inc. d/b/a Conn's HomePlus ("Conn's") seeking damages under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392, based on a series of harassing phone calls Conn's placed to Plaintiff regarding her family member's debt. Plaintiff is represented by Trista Johnson ("Johnson"), an experienced consumer attorney admitted to practice law before this Court. Conn's asks this court to disqualify Johnson from this case because, Conn's claims, she

1

gained confidential knowledge during her short tenure as in-house counsel for Conn's and that the "conclusive evidence shows the current representation will inevitably involve the violation of the confidentiality rules." Conn's also asserts disqualification is warranted because this case is "substantially related" to other cases managed by Johnson since the cases are of the same type. In addition, Conn's aims to inflict further injury by demanding sanctions against Johnson for filing the case, claiming she "willfully ignored" her ethical obligations and duties by doing so, as well as temporary and permanent injunctive relief.

Johnson's representation of Plaintiff and pursuit of this case does not run afoul of the rules applicable to attorneys practicing in this Court and Conn's has failed to carry its burden to show otherwise and that it is entitled to the extraordinary relief it seeks. For the reasons set forth below, Johnson should not be disqualified, sanctioned, or enjoined, and Conn's Motion should be denied in its entirety.

## II.
## BACKGROUND

Johnson graduated from the University of North Dakota School of Law in 2007. *See* Declaration of Trista Johnson ("Johnson Decl."), attached as Exhibit A, at ¶ 2. After becoming a Minnesota-licensed attorney, Johnson became an associate at the Consumer Justice Center, P.A. ("CJC") in Vadnais Heights, Minnesota, where she spent four years representing consumers in individual and class actions. *Id.* at ¶ 3. Her practice focused primarily on actions brought under the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the Electronic Funds Transfer Act ("EFTA"), and the Telephone Consumer Protection Act ("TCPA")[1], in addition to other state and federal laws dealing generally with privacy rights. *Id.*

---

[1] The TCPA, the relevant federal statute in this case, regulates the use of telephones to contact consumers. It forbids the use of certain automated telephone equipment, including using "any automatic telephone dialing system or an artificial or prerecorded voice" to call a cellular telephone without "prior express consent" of the consumer. 47 U.S.C. § 227(b)(1)(A)(iii).

In September 2011, Johnson left CJC to work at Faegre & Benson, now known as Faegre Baker Daniels, in Minneapolis, Minnesota. *Id*. at ¶ 4. Instead of representing consumers, however, Johnson focused on defending individual and class actions brought by consumers against banks and other financial services institutions. *Id*. After realizing the "Big Law" life was not the best fit, Johnson left Faegre Baker Daniels to work in-house for the firm's client, U.S. Bank, in October 2012. *Id*. at ¶ 5. Johnson then spent the next four years as Vice President and Corporate Counsel, working in both the Regulatory and the Litigation groups within the U.S. Bank Law Department in Minneapolis, Minnesota. *Id*.

In August 2016, Johnson and her family moved from Minnesota to Texas to be closer to Johnson's parents after her father suffered a stroke. *Id*. at ¶ 6. Johnson became a Texas-licensed attorney on September 2, 2016 and continued to work for U.S. Bank at an office in Houston, Texas. *Id*. at ¶ 7. On November 16, 2016, she was contacted by a recruiter for Conn's regarding a "Deputy General Counsel" position and was provided with a draft job description. *Id*. at ¶ 8, Exhibit B. Johnson later learned at her interview with Mark Prior, Conn's General Counsel, that she was actually being considered for a lesser position as "Legal Counsel." *Id*. at ¶ 9. Following the interview, she was provided with a new, but similar, Legal Counsel job description. *Id*. at ¶ 9, Exhibit C. The TCPA was not referenced in the job description provided to Johnson, although many other federal statutes were included as necessary areas of expertise. *See generally*, Exhibit 2. Johnson ultimately accepted the position with Conn's and started on December 19, 2016. *Id*. at ¶ 10. At the time of hiring, Johnson agreed to remain employed with Conn's for at least one year. *Id*.

Johnson was one of three or four attorneys working for Conn's at any given time – not one of two as Conn's has represented. *Id*. at ¶ 11. Mark Prior was and is still General Counsel and was Johnson's primary supervisor. *Id*. During her 15 months with Conn's, Elizabeth Hamilton and David Johnson, both attorneys, also worked within the legal department under Prior's direction and supervision. *Id*. Conn's

3

Chief Compliance Officer at the time, Christina Moore, was also a licensed attorney, although she was not formally considered an attorney for Conn's. *Id*.

There was no shortage of work during her tenure as Johnson was responsible for managing all consumer litigation; providing day-to-day counsel to multiple departments on a variety of issues affecting the company; drafting and negotiating all contracts; and supervising the work of two paralegals. *Id*. at ¶ 12. Given the breadth and variety of work to be accomplished on behalf of her client, a public company that serves the role as both retailer and financer, Conn's characterization of Johnson's role in TCPA litigation is dramatically exaggerated. *Id*. at ¶ 13. Johnson did not spend most of her time managing TCPA cases as Conn's appears to suggest in its laundry list of tasks. *Id*. There was simply little opportunity to "dive deep" into TCPA generally, let alone each individual case filed against Conn's. *Id*. Instead, Johnson leaned heavily on experienced outside counsel and Conn's paralegals to handle the bulk of the day-to-day work. *Id*. at ¶ 14. Johnson regularly checked-in with outside counsel regarding the status of cases but only attended approximately three arbitration hearings and one settlement conference. *Id*. To the extent settlement or any other decision-making authority was needed, Johnson would request such from Prior and shuttle the information back and forth between outside counsel and Prior. *Id*. at ¶ 15. There was not an over-arching litigation strategy that was in any way unique to Conn's. *Id*. at ¶ 16. Johnson's knowledge of Conn's approach to TCPA or TDCA litigation was no secret, and Johnson never gained or possessed more intel regarding Conn's approach than the plaintiffs' attorneys who had sued Conn's. *Id.*

On February 22, 2018, Johnson resigned from her position with Conn's. *Id*. Johnson did not go to work for another company or firm after leaving Conn's; instead, Johnson decided to open her own practice and return to the work she enjoyed most – representing individuals – in April 2018. *Id*. Johnson does not have any employees or staff. *Id*.

Johnson's current practice is modeled after CJC, the firm at which she started her career back in 2007. *Id*. at ¶ 19. She maintains an office in Conroe, the community in which she lives, believing there to be an absence, or at least a shortage, of skilled attorneys focused on consumer litigation. *Id*. at ¶ 20. Johnson advertises her services online via Avvo.com, Facebook, and on her website http://www.txconsumerlawyer.com. Johnson does not and has never specifically sought clients to sue Conn's or any particular party. *Id*. at ¶ 21. Johnson generally advertises her areas of expertise and experience and considers cases on an individual basis. *Id*. at ¶ 22. Johnson belongs to a number of community organizations, including the Conroe-Lake Conroe Chamber of Commerce and the Montgomery County Business Association of Women, as well as the National Association of Consumer Advocates ("NACA"), and is a volunteer attorney with Lone Star Legal Aid. *Id*. at ¶ 23. Through her efforts, Johnson is becoming the "go-to" person in Montgomery County and surrounding communities for consumer law. *Id*. at ¶ 24.

Over a year after establishing her practice, Johnson was contacted by Plaintiff regarding her claims based on events that occurred after Johnson resigned from her role with Conn's. *Id*. at ¶ 25. Plaintiff chose to retain Johnson to represent her and filed this action on May 2, 2019. *Id*. Conn's responded by sending a demand letter and then filed its Motion on June 6, 2019. *Id*.

Johnson has not shared any confidential information with Plaintiff, or anyone else, that she learned of while in Conn's employ. *Id*. at ¶ 26. Moreover, what Conn's appears to be claiming is confidential is not confidential at all. Everything – from the substance of their corporate and expert witness' testimony to their calling practices and telephony equipment – is already in the public domain or falls within the standard protocol followed by all TCPA plaintiffs' counsel in conducting discovery in TCPA cases. *Id*. at ¶ 28, Exhibits 1 – 12, filings from *Conn Appliances, Inc. v. Williams*, Civ. No. 2:18-cv-03087 (SD Tex. 2018). Johnson, an experienced consumer litigation attorney, has never been the subject of a complaint

and has never been disciplined by any court or licensing authority. *Id*. at ¶ 30. The practice of law is Johnson's profession, so she does aim to make a living in connection with filing suits, including this one, on behalf of aggrieved consumers. *Id.* at ¶ 30. Johnson is not motivated by anger or anything nefarious in filing this suit on Plaintiff's behalf. *Id*. at ¶ 32.

Conn's is a public company that claims to be constantly evolving to meet regulatory, shareholder and customer demands. *Id*. at ¶ 29. Conn's most recent Annual Report states, for example:

> We have procedures and controls in place that we believe are reasonable to monitor compliance with the numerous federal and state laws and regulations and believe we are in compliance with such laws and regulations. However, these laws and regulations are complex, differ between jurisdictions and are often subject to interpretation. As we expand into additional jurisdictions and offer new credit products such as our direct consumer loans, the complexities grow. Compliance with these laws and regulations is expensive and requires the time and attention of management. If we do not successfully comply with laws, regulations, or policies, we could incur fines or penalties, lose existing or new customers, or suffer damage to our reputation. Changes in these laws and regulations can significantly alter our business environment, limit business operations, and increase costs of doing business, and we may not be able predict the impact such changes would have on our profitability.
>
> *****
>
> ***Our management information systems may not be adequate to meet our evolving business and emerging regulatory needs and the failure to successfully implement new systems could negatively impact our business and financial results.*** We are investing capital in new information technology systems and implementing modifications and upgrades to existing systems to support our growth plan. These investments include replacing legacy systems, making changes to existing systems, building redundancies, and acquiring new systems and hardware with updated functionality. We are taking actions to ensure the successful implementation of these initiatives, including the testing of new systems and the transfer of existing data, with minimal disruptions to our business.

*See* Conn's 2018 Annual Report on 10-k at 22, 26, available at https://ir.conns.com/static-files/da5db618-f8e6-4515-bea6-942dc56e2d22. Conn's considers itself a "turnaround" company and reports credit revenue of $85.9 million and retail revenue of $334.5 million in the fourth quarter of fiscal year.[2]

---

[2] Press Release re Conn's Fourth Quarter Fiscal Year 2018 Financial Results at https://ir.conns.com/news-releases/news-release-details/conns-inc-reports-fourth-quarter-fiscal-year-2018-financial.

## III.
## ARGUMENT AND AUTHORITIES

**A.      Legal Standard.**

Conn's invokes Texas Disciplinary Rule of Professional Conduct 1.09 and ABA Model Rule of Professional Conduct1.9, as well as Fifth Circuit case law, in support of the argument that Johnson should be disqualified from representing Plaintiff.

Federal courts in Texas apply federal law when considering motions to disqualify counsel. *Seeberger v. Bank of America, N.A.*, No. EP-14-CV-366, 2015 WL 5824878, *3 (W.D. Tex. Oct. 6, 2015) (citing *In re Am. Airlines, Inc.,* 972 F.2d 605, 610 (5th Cir. 1992)); *In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir. 1992). "The Fifth Circuit's approach to ethical issues has remained 'sensitive to preventing conflicts of interest.'" *In re ProEducation Intern., Inc.,* 587 F.3d 296, 299 (5th Cir.2009) (quoting *In re American Airlines, Inc.,* 972 F.2d at 611.) At the same time, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *FDIC v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1313 (5th Cir. 1995). In recognizing "the severity of disqualification" courts do not apply disqualification rules "mechanically," but consider "[a]ll of the facts particular to [the] case... in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *In re ProEducation Intern., Inc.,* 587 F.3d at 300 (quoting *U.S. Fire Ins. Co.,* 50 F.3d at 1314); *see also, Duncan v. Merrill, Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1028 (5th Cir. 1981) (confirming that "courts have seen no need to fashion a rule that prevents an attorney from ever representing an interest adverse to that of a former client.")

Under the Local Rules of the Southern District of Texas ("Local Rules"), the Court has adopted the standards set out in the Texas Disciplinary Rules of Professional Conduct ("Texas Rules"). Texas Rule 1.09 states:

>   (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>   >   (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>   >   (2) if the representation in reasonable probability will involve a violation of Rule 1.05 [dealing with confidential client information]; or
>   >   (3) if it is the same or a substantially related matter.

The Fifth Circuit has instructed that the ABA Model Rules of Professional Conduct ("Model Rules") are the "national standard[ ] to consider in reviewing motions to disqualify." *In re ProEducation Int'l*, 587 F.3d at 299. In the Fifth Circuit, "'[w]hen dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked.... [T]he conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.'" *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 742, 173-74 (5th Cir. 1980) (quoting *United States v. Standard Oil Co.,* 136 F.Supp. 345, 367 (S.D.N.Y.1955)).

Conn's position it that Johnson must be disqualified because she, as former in-house counsel, obtained confidential information during her short tenure and managed other unrelated TCPA and TDCA cases that are "substantially related" to the present case. Because Conn's has not met its burden under the standard set for motions to disqualify, its Motion must be denied.

>   **B.     Texas Rule 1.09(a)(2): Conn's Fails To Demonstrate A Reasonable Probability Of Johnson Disclosing Confidential Information.**

Texas Rule 1.09(a)(2) prohibits "a lawyer who personally has formerly represented a client in a matter [from] thereafter represent[ing] another person in a matter adverse to the former client ... if the representation in reasonable probability will involve a violation of Rule 1.05." Tex. Disciplinary R. Prof'l Conduct 1.09(a)(2). Rule 1.05, Comment 4 explains that whether there is a "reasonable probability" that the representation will involve a violation of Rule 1.05 is a question of fact. Tex. Disciplinary R. Prof'l Conduct 1.09, cmt. 4. Rule 1.05, prohibits lawyers from, among other things, "[using] confidential

information of a former client to the disadvantage of the former client after the representation is concluded." Tex. Disciplinary R. Prof'l Conduct 1.05(b)(3). Likewise, Model Rule 1.9(b) prevents:

> [a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter [from] thereafter: ... (1) us[ing] information relating to the representation to the disadvantage of the former client ... or (2) reveal[ing] information relating to the representation.

Model Rules of Prof'l Conduct 1.9(b). Texas Rule 1.09(a)(2) and Model Rule 1.9(b) are "identical ... in all important respects." *Seeberger,* 2015 WL 5824878 at *7 (quoting *In re Am. Airlines, Inc.,* 972 F.2d at 615 n. 2.) A movant can demonstrate the probability of a Rule 1.05 violation by "pointing to specific instances" where it revealed confidential information to opposing counsel, and by explaining how that information is relevant to the present matter. *Duncan,* 646 F.2d at 1032 ("[Movant] cannot have [Law Firm] disqualified simply by stating that the firm has knowledge of [Movant's] 'practices and procedures.' Instead, it must prove that [Law Firm] has knowledge of the particular practices and procedures which are the subject matter of [the] suit.") "In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation." Model Rules of Prof'l Conduct 1.9, cmt. 4.

Conn's has not stated an adequate basis under the Texas Rule 1.09(a)(2) and Model Rule 1.9(b) to support disqualification. In its Motion, Conn's provides only generalized statements and concerns and a laundry list of "tasks" it claims Johnson "was in charge of or participated heavily in" during her 15 months of employment and does not point to specific instances where confidential information was revealed to Johnson. *See, for example, Watkins v. Trans Union, LLC,* 869 F.3d 514, 522 (7th Cir. 2017) (stating that "[h]aving experience is not the same as possessing confidential information" and that the "general experience [attorney] gained while defending [movant] is not the type of confidential information with which Rule 1.9 is concerned.") Conn's attempts to bolster its argument that Johnson was an "integral" driving force behind its TCPA litigation strategy by describing two meetings Johnson "organized and led"

9

at its call center during which privileged and confidential communications "regarding CAI's telephone and communications equipment, calling procedures, defense strategies, and use of expert and corporate witnesses," took place. But this is simply more of the same nonspecific allegations, like those made by the moving party in other cases, like *Seeberger, supra,* that were found insufficient to support their motion to disqualify. In *Seeberger*, the plaintiffs sought to disqualify opposing counsel because he had represented them in a potential bankruptcy proceeding. 2015 WL 5824878, *1-2. The movants claimed the attorney and his firm must be disqualified because he was "aware of information about [them] that would be relevant to" their adversary's defense in the pending suit, and that the firm gained "knowledge that other counsel may not have pursued or been privy to." *Id*. at *3. The movants further argued that there were "similarities between the core legal questions posed." *Id*. at *4. The court denied the motion to disqualify because the movants' general allegations about the attorney's knowledge failed to establish a reasonable probability that the attorney's previous representation would result in a breach of confidentiality owed to the movants. *Id*. at *8; *see also Watkins*, 869 F.3d at 525 (affirming denial of disqualification motion in a Fair Credit Reporting Act ("FCRA") case filed against attorney who had previously represented Trans Union in many FCRA cases over the course of four years).

Moreover, "information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying." Model Rules of Prof'l Conduct 1.9 cmt. 3. Thus, even assuming Johnson gained and still retains certain knowledge about Conn's business, all of it has been rendered obsolete by the passage of time and/or cannot be considered confidential since it has been disclosed to the general public as well as Conn's other adversaries in discovery. For example, in seeking to appeal an unfavorable TCPA arbitration awarded to its customer, Johnnie Williams, Conn's recently filed the following:

- Williams's Conn Appliances, Inc. Retail Installment Contract;

10

- The entire transcript of the Final Arbitration Hearing, including testimony by Williams and Conn's corporate representative, Clint Walton;

- The original arbitration demand filed with the American Arbitration Association containing the names and contact information of Williams, his attorneys, and Conn's outside counsel;

- Williams's Amended Itemization of Damages;

- Conn's unsuccessful Motion for Summary Disposition;

- Conn's Pre-Hearing Brief;

- The Affidavit of James Noble, Jr., President and Chief Operating Officer of Noble Systems, describing Conn's phone system and software capabilities;

- The Report of Adam Sorini, Ph.D., CCFP, Conn's retained expert; and,

- Copies of slides relied on during Conn's closing argument.

*See* Johnson Decl. at ¶ 28, Exhibits 1-12. Thus, if there was ever a "playbook" to Conn's TCPA litigation strategy, it has already been published. Additionally, because the details concerning Conn's calling practices, policies, procedures, employee training, expert witness report and findings, telephone systems, amongst other TCPA-related issues, are undisputedly a matter of public record in *Williams* and other cases, none of this information is confidential. Because Conn's fails to raise a legitimate concern and meet its burden to satisfy the standard, Conn's Motion must be denied.

    **C.    Texas Rule 1.09(a)(3): Conn's Fails To Demonstrate That The Present And Any Prior Matters Are Substantially Related.**

The party seeking disqualification bears the burden of proving that the present and prior representations are substantially related. *In re Am. Airlines, Inc.,* 972 F.2d at 614; *Duncan,* 646 at 1028. The "substantial relationship" test requires:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the

attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.

*Am. Airlines,* 972 F.2d at 614 (citing *Johnston v. Harris Cnty. Flood Control Dist.,* 869 F.2d 1565, 1569 (5th Cir.1989); *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1341, 1345 (5th Cir.1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1028 (5th Cir.1981)). The court should focus its inquiry "on the precise nature of the relationship between the present and former representations." *Duncan,* 646 F.2d at 1029. Thus, "[o]nly when the moving party delineates with specificity the subject matters, issues, and causes of action presented in the former representation can the district court determine if the substantial relationship test has been met." *Id.* "Merely pointing to a superficial resemblance between the present and prior representations" will not suffice. *Id.* Comment 4A states:

> The "same" matter aspect of this prohibition prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer.

Tex. Disciplinary R. Prof'l Conduct 1.09, cmt. 4. The Model Rules further clarify that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." Model Rules of Prof'l Conduct 1.9, cmt 2.

Conn's efforts to disqualify Johnson fall squarely within the Rule 1.9 carve-out for a lawyer who "recurrently handled a type of problem for a former client." The present matter and Johnson's previous work for Conn's are not part of the same legal dispute or matter, and her representation of Plaintiff cannot be regarded as "switching sides." The facts giving rise to this dispute did not even arise until after Johnson left Conn's employ and the case was not filed until over a year later. Johnson did not represent Conn's in any suit brought by or against Plaintiff. She worked as in-house counsel and handled a variety of work, including but not limited to litigation management, but did not personally represent Conn's in any TCPA or TDCA case. While the present case and some of the litigation Johnson managed involved TCPA and

TDCA violations, this case does not rely on the same facts of one "particular situation or transaction" Johnson handled while employed by Conn's. The facts upon which this case will turn – recurrent and harassing debt collection calls – are unique to Plaintiff's claims against Conn's and are not interwoven with any case that Johnson managed. Each TCPA case, including Plaintiff's, is factually distinct. Conn's claim that previous cases and this case implicate the same law or subject matter is insufficient to demonstrate a "substantial relationship" between this and any prior matter. *See Duncan*, 646 F.2d at 1029 (finding insufficient the movant's statements that the previous representation involved the same type of work, conferences with movant's employees, and the preparation of various legal documents, and that statements regarding the attorney's work "on a variety of matters and over a relatively long period of time, is alone insufficient to establish the required nexus with the present case.")

      **D.**    **Conn's Motion For Sanctions Should Be Denied.**

Not being satisfied with the remedy of disqualification, Conn's seeks to add further insult to injury by asking for additional relief in the form of sanctions against Johnson merely for filing this case and then not withdrawing after receipt of its demand letter. Conn's offers no support for asking the Court to apply 28 U.S.C. § 1927 in this manner and its request for sanctions should be denied.

The Court's inherent powers to impose sanctions pursuant to 28 U.S.C. § 1927 "ought to be exercised with great caution" and reserved for "conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "The threshold for the use of the inherent power sanction is high." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir.1996). Although "the inherent power extends to a full range of litigation abuses," the United States Supreme Court has cautioned that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44, 46, 111 S.Ct. 2123. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the

judicial process." *Id*. at 44–45, 111 S.Ct. 2123. Attorney's fees may be imposed "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" but the court "must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions." *Matta v. May*, 118 F.3d 410, 416 (5th Cir.1997). Further, any sanctions ordered should be "the least severe sanctions adequate to accomplish the purpose for which the sanction was imposed." *Topalian v. Ehrman*, 3 F.3d 931, 938 (5th Cir. 1993).

As detailed above in response to Conn's Motion to Disqualify, there is no outright prohibition against representing a party against a former client or employer, and in fact, the rules permit Johnson to engage in the behavior Conn's declares is "egregious, unprofessional and unethical" and the "butt of jokes." Filing a case and disagreeing with her former employer's position about applicability of Texas Rule 1.09 cannot reasonably be described as "unreasonable and vexatious," especially where the merits of the case itself are not disputed. Conn's does not complain that Plaintiff fails to state a meritorious claim, or that she filed it for an improper purpose or without a sufficient factual basis, but instead challenges her attorney's integrity in filing the case as a basis for sanctions.

Johnson is an experienced consumer attorney who simply filed a case on behalf of a consumer against Conn's. That is her job. Conn's cannot cite to anything to support its claim that Johnson's filing of this case was in bad faith or for any nefarious purpose. Conn's also fails to explain or provide support for its position that its Motion to Disqualify and the relief sought therein is insufficient to serve its needs. As Conn's fails to provide an adequate basis for imposing sanctions, its Motion must be denied.

    **E.**  **Conn's Application For Injunctive Relief Should Be Denied.**

Again, Conn's seeks to unnecessarily inflict additional damage by also requesting temporary and permanent injunctive relief "enjoining Ms. Johnson, including any other attorneys or legal professionals she employs, from representing Plaintiff or any other individual asserting TCPA or TDCA claims against

CAI." Conn's argues such extraordinary relief is necessary and that it will be "immediately and irreparably harmed by Ms. Johnson's breach of her ethical duties and obligations to it as a former client and by the disclosure of CAI's confidential client information in proceedings adverse to CAI." Conn's application for injunctive relief ("Application") should be denied because Conn's fails to carry its burden and its demand for injunctive relief amounts to nothing more than "overkill."

In the Fifth Circuit, there are four prerequisites for obtaining the extraordinary relief of a temporary restraining order ("TRO") and/or a preliminary injunction. To prevail, the applicant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the Conn's; and (4) that the injunction will not disserve the public interest. *See Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *Mississippi Power & Light Co., United States v. Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The movant bears the burden to prove all four requirements in order to be entitled to injunctive relief. *Palmer*, 579 F.3d at 506.

Injunctive relief is an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance. *See Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Courts in the Fifth Circuit have made clear that preliminary injunctions and TROs constitute "extraordinary and drastic remed[ies]," which are "not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *see also Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999) ("[t]emporary restraining orders and preliminary injunctions are extraordinary relief and rarely issued.").

Conn's Application is little more than a recitation of its Motion to Disqualify and Motion for Sanctions: Johnson is an unethical attorney, an embarrassment to the legal profession, and must be

stopped. The arguments and authorities presented above, however, explain why Conn's characterization of Johnson and her conduct as ethically reprehensible is meritless and that its demand for blood is unwarranted.

Conn's cannot demonstrate Johnson has done anything necessitating this extraordinary relief, or that there is a substantial risk of harm. Johnson has not and will not disclose any confidential information or breach any of her continuing ethical obligations – nor would she need to in order to pursue Plaintiff's claim: everything Conn's describes as "confidential" has already been published and is part of the public record.

The potential injury to Johnson, the Plaintiff, and other consumers is much greater than the "threatened" injury claimed by Conn's. If injunctive relief is granted, Plaintiff will no longer have the representation of her choice in this case and will have to seek alternative counsel, and there is no assurance that Plaintiff will be able to retain local counsel experienced in consumer law. The same may be said of other potential consumers, who will be unduly limited in their choice of counsel. Making it even more difficult for Plaintiff and other consumers to pursue their rights under federal and state statutes aimed at protecting them from harassment, abuse and invasions of privacy by depriving them of the attorney of their choice does not advance the public's interest. Since Conn's cannot demonstrate any of the requirements necessary for injunctive relief, its Application must be denied.[3]

## IV.
## CONCLUSION

Being exposed to and the potential to recall some of the information gained by an attorney is inadequate to support disqualification. If it was an adequate basis, no lawyer could ever be adverse to a

---

[3] Plaintiff also questions whether the Court has the authority to enjoin Johnson from ever filing a case against Conn's given the standard for disqualification is fact-specific and requires a rigorous analysis for each complained of representation. Conn's fails to provide any precedent supporting its position that the Court has the authority to order this form of relief against an attorney with respect to matters that are not before the Court.

16

former client and the rules would simply state that general prohibition. But neither the Texas nor the Model Rules state a general prohibition. A lawyer is only precluded from being adverse to a former client when the current, adverse matter is substantially related to a past matter or matters handled by the lawyer for the former client, or when the representation in "reasonable probability" will involve a violation of Rule 1.05 dealing with confidentiality. Conn's has not made the requisite showing in support of its Motion to Disqualify, Motion for Sanctions, or its Application for Injunctive Relief. For all of the above-stated reasons, its Motion must be denied in its entirety.

Dated this 27th day of June, 2019.

Respectfully submitted,

*s/Trista M. Johnson*
Trista M. Johnson, Esq.
TX State Bar No. 24101089
Southern District of TX Bar No. 3180848
**Law Office of Trista Johnson**
701 N. Loop 336 E., Suite 106
Conroe, TX 77301
Telephone: 936.570.0575
trista@txconsumerlawyer.com

## CERTIFICATE OF SERVICE

I certify that on June 26, 2019, a true and correct copy of Plaintiff's Memorandum in Opposition to Conn's Motion to Disqualify, Application for Temporary and Permanent Injunctive Relief, and Motion for Sanctions was served by email on the following attorneys for Defendant:

- Michael Harvey; mharvey@munsch.com
- Sameer Karim; skarim@munsch.com
- Christopher Jordan; cjordan@munsch.com

*/s/ Trista M. Johnson*
Trista M. Johnson